**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| STEPHANIE D. CURTIS, | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | **Civil Action No. 3:10-cv-01397-K** |
| | § | |
| v. | § | |
| | § | |
| | § | |
| THE TRAVELERS HOME AND | § | |
| MARINE INSURANCE COMPANY, | § | |
| AND GERALD SWAUGER, | § | |
| | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT[1]

COMES NOW Plaintiff, Stephanie D. Curtis ("Curtis") and files this Plaintiff's First Amended Complaint shows as follows:

### I.  DISCOVERY CONTROL PLAN[2]

1.      Discovery is intended to be conducted under Level 2 as described in Rule 190.3 of the Texas Rules of Civil Procedure.

### II.  PARTIES

2.      Stephanie D. Curtis is a resident of Dallas County, Texas. Pursuant to TEX. CIV. PRAC. & REM. CODE §30.014, the last three digits of Curtis's driver's license number are 644, and the last three digits of her social security number are 005.

---

[1] Plaintiff originally filed a petition in state district court in Dallas County, Texas and is amending that pleading herein.

[2] Since this Complaint adds a party that destroys diversity jurisdiction, Plaintiff is filing a Motion for Remand contemporaneously with this First Amended Complaint.  Additionally, Plaintiff has tailored this First Amended Complaint to remain compliant with the Texas Rules of Civil Procedure should the case be remanded to the Dallas County District Court.

3.      The Travelers Home and Marine Insurance Company ("Travelers") is an insurance company organized under the laws of the State of Connecticut.  Travelers is authorized to engage in the insurance business in Texas and has an office located at 1301 E. Collins Blvd. #290 Richardson, Dallas County, Texas 75081.  Travelers is a citizen of the State of Connecticut for the purposes of diversity jurisdiction.  Travelers has appeared in this action and may be served through its counsel of record in the case Terrence C. McCrea, Zelle, Hofmann, Voelbel & Mason LLP, 901 Main Street, Suite 4000, Dallas, Texas 75202.

4.      Gerald Swauger ("Swauger") is a resident of Dallas County, Texas living at 2650 Cedar Springs Road, Apt. 2211, Dallas, Texas 75201 – 1425.  Plaintiff requests that a summons be signed, sealed and issued with respect to Defendant Swauger.

### III.  JURISDICTION AND VENUE

5.      This court does not have subject-matter jurisdiction over this matter because there is not complete diversity of citizenship between the parties as Plaintiff and Swauger are both residents of the State of Texas.  Furthermore there is no federal question at issue in this matter.

6.      Travelers is subject to the personal jurisdiction of this Court because it has a principal place of business located at 1301 E. Collins Blvd. #290 Richardson, Texas 75081.  Furthermore, Travelers has systematic and continuous contacts with Texas.  Also, the causes of action set forth in this matter arise from Travelers' contacts with Texas.  Assumption of jurisdiction by the State of Texas will not offend traditional notions of fair play and substantial justice.

7.      Swauger is subject to the personal jurisdiction of this Court because he is a resident of Texas.

8.      A substantial part of the events and omissions giving rise to the claims occurred in Dallas County.  The insured property that is the subject of this case is located in Dallas County.

## IV. INTRODUCTION

9.      In the summer of 2006, Curtis purchased a residential lot with income producing property located thereon, with plans to eventually build a home and in the meantime enjoy rents from the lease of the residence to assist with payment of her mortgage, taxes and insurance.  Her economic plans for the property came to fruition and then some.  Based on the prime location of the property, she was able to successfully and consistently lease the home and consider offers from would-be builders and purchasers, up until January 11, 2010 when the pipes burst causing the home to become uninhabitable.  Since that time, thanks to her insurance company and its adjuster – Travelers and Swauger – she has not been able to show the property for rent or sale, the home has been vandalized, and she has lost devastating amounts of income in addition to thousands of dollars paid for interior improvements just days before the catastrophic incident destroyed the inside of the property.  Curtis has suffered personal and economic losses in addition to contractual damages under the Policy, for which Travelers knows there is no reasonable basis for denial.  Travelers and Swauger have disrupted and disturbed, without any remorse whatsoever, Curtis's overall well-being in the gross mishandling of the Claim.

## V.  FACTS

### A.      The Catastrophic Incident and Mitigation Efforts of Curtis

10.      Travelers, through its local agent, Manning B. Shannon, whose office is located at 5115 McKinney Avenue, Suite D, Dallas, Texas 75205, issued an insurance policy naming Curtis as the insured and insuring the dwelling and personal property located at 4045 Glenwick Lane, Dallas, Texas (the "Premises") against loss by freezing of plumbing, among other things.   The coverage period for the policy is from July 14, 2009 to July 14, 2010.  A true and correct copy of the subject insurance policy number 0CFJ55985112183633 1 is attached as Exhibit A and incorporated by reference herein (the "Policy").  Pursuant to the terms of the Policy, Curtis had insurance protection up to $450,000 for the dwelling, $315,000 for personal property, and $135,000 for loss of use for damages resulting from freezing of plumbing, among other things, at the Premises. The deductible on the policy is $4,500.  The Policy was at all times material to this action in full force and effect.

11.      On January 11, 2010, the Premises sustained massive damage to its dwelling structure and contents as the result of frozen pipes.   The damage was devastating and catastrophic, impacting many areas in the dwelling, including the kitchen, family room, living room, entry, entry closet, hallway, hall closets, three bathrooms, utility room, air conditioning system, three bedrooms, four bedroom closets and the master vanity.  Included in the damage were blown-out walls, caved-in ceilings, destroyed appliances, and ruined flooring.   The reasonable costs of repairing and replacing the damaged property is at least $91,101.88 as shown in detail on Exhibit B, which is attached and incorporated herein by reference.  The costs associated with and

charged by the remediation vendor, Olympic Cleaning & Restoration ("Olympic") were $12,280.59 as shown in detail on Exhibit C, which is attached and incorporated herein by reference.   The damages for loss of use are continuing to be incurred, and at the time of filing this suit were at least approximately $15,000.00.   Personal property losses were also incurred in excess of $2,500.   Travelers was notified of the damage on January 11, 2010 through submission of a claim that was assigned claim number U8E1171001H (the "Claim).

12.   Upon notification, Travelers represented that due to the numerous other claims submitted as a result of the below-freezing temperatures, an adjuster would not be available to assist Curtis with the damages for several days.   In fact, an adjuster did not even appear on site at the Premises until January 18, 2010 – seven days after the catastrophic incident occurred.

13.   In the meantime, Travelers instructed Curtis to begin repairs and remediation on her own.   Accordingly, in an effort to mitigate the damage, Ms. Lori King, Curtis's assistant, immediately contacted and engaged Olympic and stayed at the property until early the next morning supervising the damage mitigation efforts.   That night work began to stop further damage and to clean the Premises.   Due to the massive damages, that work went on for several days.   The costs associated with and charged by the Olympic were $12,280.59 as shown in detail on Exhibit C, which is attached and incorporated herein by reference.   Due to Travelers' failure to timely accept coverage and pay the Claim and Swauger's inattention and purposeful delay of Curtis's claim, Olympic has filed a lien against the Premises, thus further increasing damages to Curtis, and purportedly, Olympic's claim.

14.     In addition to Olympic, Curtis had a plumber on site on January 15 and again on January 20, 2010 to repair the busted pipes.  Curtis has paid the invoices associated with the plumbing repair work, as shown in detail on Exhibit D, which are attached and incorporated herein by reference.  On at least one occasion just after the incident, the plumbing repair company had conversations with Travelers' adjuster regarding the extent of the repair work believed to be warranted.

15.     Despite Curtis's prompt action in reporting the Claim, and Ms. King's tireless efforts in assisting Curtis with mitigation efforts and repairs and her persistence in scheduling a time and date for Swauger, Travelers' adjuster, to assess the Claim, adjuster Swauger did not visit the property until January 18, 2010 - one week after the devastating and catastrophic incident.  That was the only time a Swauger visited the property to allegedly estimate the damages, until almost six months later, on June 14, 2010 after Curtis hired an attorney and threatened suit.  Swauger failed to fully and properly investigate Curtis's claim and assess the damage caused by the burst pipes for almost six months.  Swauger made no effort to determine the claim amount for six months.

16.     The events leading up to the filing of this suit would be unfortunate for any insured and in this instance turned out to be an unreasonably long investigation that led to an absurdly insufficient payment on the Claim only after extensive amounts of time and money were spent by Curtis to try and achieve resolution and rightful payment. Travelers' and Swauger's conduct in this case has been extreme and has produced damages in addition to claims under the Policy.

**B.     Travelers' Unconscionable Delay**

17.     As the end of January approached, Curtis asked Travelers for an

adjustment of the Claim.  None was provided at least in part because Swauger was not diligent in investigating the amount of the claim.  Instead, Curtis was asked to give a statement which she readily consented to provide on January 28, 2010.  Her statement was conducted by investigator Jason Quast, and despite the fact this statement was conducted over 15 days after notice of the Claim was first provided, Curtis fully answered all questions posed to her.   During her statement, Curtis explained the immaculate upkeep and thorough maintenance she provided at the Premises.  She told Quast she was even having improvements done on the Property when the Claim occurred.  She also told investigator Quast, *inter alia*, that the Premises had been under a Residential Lease Agreement since October 2008 and that the tenant had moved out in late 2009 due to the loss of her husband to brain cancer, and conveyed the name of the prior tenants.  When asked about the utilities, Curtis stated that the utilities had at all times been in the tenant's names during the term of the Lease, but that during prior tenancies it was more common for Curtis to maintain the utilities in her own name.

18.    During Curtis's statement, investigator Quast, who believed the Premises to be heated by electricity, requested Curtis provide utility bills for December 2009 and January 2010 and the Lease under which she rented the Premises to her prior tenant who had recently vacated.  Curtis offered to provide more information regarding maintenance of the Premises, but investigator Quast stated it was not necessary to provide anything further.  As such, Curtis did provide electricity bills, the Lease and email correspondence between Lloyd Kraus (a law clerk in Curtis' law firm) and the prior tenants regarding extensions of the Lease, all on the same day they were requested.  No additional requests for information were made on this date nor would be made in the near future.  As of the

conclusion of Curtis's January 28, 2010 statement (at the very latest), Travelers knew, or should have known: (i) the events giving rise to the Claim; (ii) the catastrophic nature of the damages sustained, (iii) the terms of the Lease, (iv) the identity of Curtis's prior tenants, (v) that the utilities had been in the prior tenants' names during their tenancy, (vi) that the Premises were meticulously maintained at all times, and specifically, from the time the tenants vacated until the incident, (vii) the names of all those that assisted Curtis with not only reporting the Claim but with the maintenance, upkeep and repairs of the Premises, and (viii) the name of the plumber and extent of work performed.  By at least that date, Travelers' had facts that, if even minimally investigated, should have led to a reasonable decision on the Claim.

19.     During the several weeks following her statement, Curtis made numerous inquiries of Travelers and adjuster Swauger regarding payment of the Claim.  Travelers failed to respond.  Instead, on February 24, 2010, 44 days after the incident and nearly a month after Curtis's statement, in a further effort to delay payment on the Claim, Travelers and its engineering firm made a new request for information from Curtis.  This time, Travelers asked for the opportunity to speak with the plumber who made the initial repairs after the incident, the plumbing invoices, and natural gas bills for January 2009, December 2010, and January 2010.  Travelers and Swauger knew that plumbers had been to the Premises more than six weeks before but delayed its request for that information until late February 2010.  On March 5, 2010, Curtis promptly responded by delivering all plumbing invoices, and a number of other invoices and documents that proved she had carefully maintained the property up to and through the date of the incident.  Curtis also explained why she could not provide the natural gas bills – an issue she first touched on a

month prior in her January 28, 2010 statement.  Atmos Energy would not release bills to Curtis because they were not in her name for the periods requested.  In her March 5, 2010 letter, Curtis again made a demand for payment of the Claim.

20.     Another month passed with no response from Travelers and no further investigation of the amount of the claim by Swauger.  Based on this silence, Curtis hired her own team of adjusters and requested they contact Swauger to bring resolution to the Claim.  When Travelers failed to respond, Curtis had her own adjustment team estimate the damages and perform a full adjustment of the damages to the Premises.  Still receiving no response of any kind from Travelers or Swauger, on April 13, 2010, after her property was left in a state of disrepair for over three months, Curtis wrote to Travelers (i) again stating that she had provided all information requested, (ii) advising it of its duty to confirm or deny the claim within 15 days of receipt of information from her and within a reasonable time, and (iii) offering it the opportunity to pay the full amount of the adjusted Claim, despite the cited statutory damages, interest and attorneys fees to which she was entitled.  In her April 13th demand, Curtis provided the adjustment estimating the property damages to be at least $91,101.88, as shown in detail on Exhibit B, and a detail of the costs charged by Olympic totaling $12,280.59, as shown in detail on Exhibit C.

21.     Suddenly, nine days later, Travelers responded.  But, not with money or a resolution of the Claim.  Instead, Travelers hired an attorney to respond to Curtis's demand, and on April 22, 2010, through its counsel, Travelers wrote Curtis a letter claiming that its duty to accept or deny the Claim had not yet been triggered because the natural gas bills it requested had not been provided.  However, as first revealed in her

January 28, 2010 statement and again explained in her March 5, 2010 letter, Curtis could not obtain those utility bills despite her efforts to do so.  In the April 22, 2010 letter from counsel, Travelers asked – for the very first time – to see copies of natural gas bills for the Premises for the first month the bills were transferred into Curtis's name, after the date of the incident; and, for Curtis to provide a Statement Under Oath ("SUO").   The very next day Curtis provided that bill and a lengthy SUO to Travelers' counsel.  During this April 23, 2010 deposition – after leaving Curtis without the use of her property for over three-and-a-half months and refusing to accept or deny coverage or pay the Claim – Travelers' asked for a list of "each and every single individual that had been in the Premises from the time the tenants vacated to the date of the incident."  This was the first request for this information and is a question that, if truly relevant to the investigation, should have been asked during Curtis's first statement – nearly three months before.  Moreover, the names of these individuals were already known, or should have been known to Travelers at the time the request was made.

22.     Despite all the information provided to it, its statutory duties under Texas and other applicable law, and the numerous demands for payment made by Curtis, by late April 2010, Travelers still had not (i) accepted the Claim, (ii) rejected the Claim, or (iii) asked for more time to respond.  As a result, Olympic, the company that provided remediation services at the Premises based on Travelers' instructions, went unpaid and filed a mechanic's lien against the Premises.  As a result, the Premises now cannot be sold with a clear title. Within just a few days prior to the date of filing this suit, Curtis was contacted by a prospective buyer for the property, but knowing she could not convey clear title in a sales transaction due to the encumbrance effecting the property as a result

of Travelers' and Swauger's bad faith in handling her Claim, Curtis has been unable to respond meaningfully. The mechanic's lien filing has purportedly lead to further damage to Curtis's creditworthiness, as well as de-valued her property, for which she is entitled to damages.

23.     It was not until May 20, 2010, nearly another month later, and now nearly five months after the incident, that Curtis received yet another request from Travelers – this time to speak with Lori King, Curtis's assistant. Because by now, Curtis had been forced to hire her own counsel to pursue the Claim against Travelers, counsel for Curtis spoke with Travelers' investigator, Jason Quast regarding the direction of the investigation and his late request to interview Ms. King. In that phone call, despite stating he wanted to interview Ms. King, investigator Quast confirmed that Curtis had already fulfilled all of Travelers' requests for information. Nevertheless, Ms. King provided Travelers with a statement on May 26, 2010. It was during this time that Curtis learned that Travelers had also just interviewed Lloyd Kraus in the first half of May. Ms. King was known to Travelers just days after the incident. Mr. Kraus was a name known to Travelers as early as January 28, 2010. There was no justification for Travelers' over four-month delay in interviewing Ms. King and Mr. Kraus.

## C.     Threats by Adjuster Swauger to Sue Present and Former Employees of Curtis's Law Firm.

24.     On June 1, 2010 – almost six months after the Claim was made and nearly four months after the last date on which Curtis provided Travelers' latest request for information necessary to resolve the Claim – adjuster Swauger called to threaten that while Travelers would accept the Claim, it was considering pursing those that had assisted Curtis with the property.

25.     As part of his plan to intimidate and coerce Curtis into accepting a far lesser amount than that to which she was entitled for her Claim, adjuster Swauger called Curtis's place of employment on June 1, 2010 and spoke to Ms. King.   During that conversation, Swauger stated he wanted to provide an update on the Claim.   In response, Ms. King encouraged Swauger to please hold so he could speak to Curtis, but Swauger insisted in providing the "update" to Ms. King and in so doing threatened a subrogation claim against Ms. King and others.   He then demanded to re-visit the Premises to investigate Travelers' subrogation claims. Curtis then took over the phone call and Swauger changed his tune, stating he merely needed to re-visit the Premises to "re-evaluate his prior adjustment of the claim." Based on adjuster Swauger's actions on this call, Curtis has reason to believe that similar threats were made to other individuals from whom Travelers sought information in this so-called investigation, potentially damaging the relationships and reputations of Curtis and her law firm with former clerks and employees.

26.     There has been no explanation for Swauger's failure to revisit the Premises to "evaluate his prior adjustment of the claim" in the four-and-half months that had passed since the incident.   He had ample opportunities to do so prior to his June 1, 2010 threatening telephone call to Curtis's place of employment.   Swauger had set out on a plan to deny the claim from the outset and thus felt there was no need to conduct an evaluation of the value of Curtis's claim in earnest.   He purposefully neglected the claims and delayed his adjustment of the Premises.

27.     Curtis demanded that adjuster Swauger put Travelers' claim decision in writing, to which Swauger showed resistance and acted with callous disregard to Curtis's

request.  Instead, he was aggressive toward Curtis and King regarding the re-inspection and attempted to harass, berate, embarrass and bully them, by making threats and untrue accusations disturbing them in their work place. Finally, Travelers provided written notice of its decision to accept the Claim on June 1, 2010.  In that letter, Swauger demanded that Travelers be permitted to re-inspect the property to compare its adjustment against the one provided by Curtis in April.  There is no reason that this comparative inspection could not have taken place in the six weeks that passed since Curtis's adjustment was provided to Travelers, or better yet, on January 11, 2010 when the Claim occurred.  Swauger's correspondence also explained that Travelers was making its obligation to reimburse for cost in excess of its adjustment expressly contingent on Travelers and Swauger having the chance to re-inspect the Premises.

28.    Within less than a day of Swauger's call, on June 2, 2010, Curtis's own adjuster attempted to set up the re-inspection as quickly as possible by sending Swauger an email, to which Curtis's adjuster received an out-of-office email response advising that Swauger would be on vacation until June 11, 2010.  No one else from Travelers responded to Curtis's attempt to set up the re-inspection.   Finally, after more correspondence from Curtis's attorney to Traveler's counsel demanding payment on the claim, Swauger responded on June 10, 2010, via e-mail to Curtis's offer to set the appointment for the re-inspection.

**D.    Failure to Timely or Adequately Pay Claim and Resulting Damages**

29.    On June 4, 2010, while Swauger was unavailable to address the re-inspection, Travelers' check was received by Curtis in purported payment of the Claim. Notwithstanding the fact that Travelers was presented with an estimate of reasonable

repairs totaling at least $91,101.88 plus a detail of the charges for the remediation demanded by Travelers totaling $12,280.59, Travelers offered to settle the Claim for $17,473.96 and disbursed $12,456.85 after taking out the deductible and recoverable depreciation.  That settlement amount is reflective of a wholly inadequate adjustment preformed by Swauger in his single visit to the Premises.  That payment was grossly inadequate for the damage to the Premises and amounts to Travelers still having not paid the Claim as required under the Policy.

30.     Finally, on June 14, 2010, Travelers conducted the re-inspection of the Premises.  In addition to Swauger, also in attendance on that date were Swauger's supervisor Tracie Lewis, Unit Manager, Property Unit; and, Kevin Brown, Technical Specialist.  Also accompanying Swauger was the same remediation vendor that performed work at the Premises beginning on the night of the incident – an individual to whom adjuster Swauger had spoken with many times before.  Swauger, now with a supervisor watching, almost six months after the incident and for the very first time finally appeared to put forth an earnest effort to formulate an adjustment for the Premises, indicating with absolute clarity that Swauger had violated his statutory duties to Curtis up to that point and that Travelers knowingly violated its contractual, statutory and common law duties up to that point.  Swauger's actions and attitude at the re-inspection were an admission that he and Travelers acted knowingly in violating its duties to Curtis since the first inspection.

31.     Several days after its re-inspection, on June 18, 2010, Travelers sent a letter advising that it would be making an additional disbursement to Curtis based on its re-inspection of the Premises.  Based on the re-inspection, which could have taken place

during the five months following the incident, Travelers' replacement cost estimate was increased to $34,500.44.  After deducting the prior amount paid, depreciation and the deductible, Travelers indicated that it would disburse an additional $11,846.26 to Curtis. Travelers' additional payment was received on June 22, 2010 – *162 days* after the catastrophic damages were sustained, and still remains grossly inadequate for the damages sustained.

32.     At no time during the five months that the Premises was left devastated did Travelers or Swauger make a request to extend the time to evaluate the Claim nor did they explain why the process was taking so long to complete – in fact, investigator Quast turned down Curtis's early attempts to provide him with more information.

33.     Due to Travelers' and Swauger's acts of bad faith, dilatory and incompetent investigation techniques, undue delay, unfair dealings, duress, harassment, unreasonably late and low payment, and overall gross failure to properly address the Claim when they knew or should have known that coverage of the claim was reasonably clear, the Premises has remained in a state of disrepair for over five months.  As a result, it cannot be inhabited, leased, or shown for a potential sale, leaving Curtis with over six figures in actual damages, plus entitlement to interest, attorneys' fees, treble damages and other extra-contractual damages from Travelers and Swauger.  Finally, the existing Policy must be renewed on July 14, 2010 (in less than 30 days) and due to the status of the Premises, Curtis has had difficulty finding an affordable renewal policy with an alternative insurer.

## VI.  CAUSES OF ACTION

**Unfair Settlement Practices – Violation of Texas Insurance Code § 541.060(a)(2)**

### A.   Travelers

34.     Curtis incorporates all of the foregoing paragraphs as if fully set forth herein.

35.     After having received notice of Curtis's losses clearly covered by the parties contract for insurance as set out above, Travelers engaged in unfair settlement practices as enumerated and defined in Section 541.060(a)(2) of the Texas Insurance Code by failing to attempt in good faith to effectuate a prompt, fair and equitable settlement of the Claim when Travelers' liability was reasonably clear.

36.     Travelers' violation of Texas Insurance Code Section 541.060(a)(2) was the producing cause of actual damages to Curtis.

### B.   Swauger

37.     Curtis incorporates all of the foregoing paragraphs as if fully set forth herein.

38.     Swauger engaged in unfair settlement practices as enumerated and defined in Section 541.060(a)(2) of the Texas Insurance Code by failing to attempt in good faith to effectuate a prompt, fair and equitable settlement of the Claim when Travelers' liability was reasonably clear.

39.     Swauger failed to properly investigate and adjust the Claim with any measure of diligence and delayed resolution of the Claim after liability was reasonably clear.  Furthermore, Swauger made a threatening and inappropriate telephone call to Curtis's place of employment in order to impact Curtis's decision on settlement terms

offered by Travelers.

40.     Swauger's violation of Texas Insurance Code Section 541.060(a)(2) was the producing cause of actual damages to Curtis.

**Unfair Settlement Practices – Violation of Texas Insurance Code § 541.060(a)(4)(A)**

41.     Curtis incorporates all of the foregoing paragraphs as if fully set forth herein.

42.     After having received notice of Curtis's losses clearly covered by the parties' contract for insurance as set out above, Travelers engaged in unfair settlement practices as enumerated and defined in Section 541.060(a)(4)(A) of the Texas Insurance Code by failing within a reasonable time to affirm or deny coverage of the Claim made by the policyholder Curtis.

43.     Travelers' violation of Texas Insurance Code Section 541.060(a)(4)(A) was the producing cause of actual damages to Curtis.

**Breach of Contract – Insurance Policy**

44.     Curtis incorporates all of the foregoing paragraphs as if fully set forth herein.

45.     Despite the fact that all conditions precedent to Curtis's recovery have been performed or occurred, Travelers has failed and refused to pay Curtis in accordance with its contract obligations.

46.     Travelers' failure to perform under the Policy caused injury to Curtis.

**Breach of Duty of Good Faith and Fair Dealing**

47.     Curtis incorporates all of the foregoing paragraphs as if fully set forth herein.

48.     On January 28, 2010 (and certainly by March 5, 2010, at the latest), after Curtis provided all documents, explanations, and other information Travelers represented was needed to resolve the Claim, Travelers' knew or should have known that coverage of the Claim under the Policy in force was reasonably clear and had no reasonable basis for denial of the Claim.   Despite this fact, Travelers delayed payment of the Claim and refused to pay Curtis promptly and as the Policy required.

49.     Travelers did not perform a thorough investigation and/or conducted its investigation in bad faith; Travelers attempted to use its investigation as a pretext for denial or delay in payment of the Claim; Travelers' adjusters and investigators knowingly lacked objectivity during their investigation; and, Travelers handled the Claim in a way that was false, deceptive or unfair and its conduct was extreme.

50.     Consequently, Travelers breached its duty to deal fairly and in good faith with Curtis.   Travelers' breach was a proximate cause of the losses, expenses, mental anguish and delay damages, among other extra-contractual damages, suffered by Curtis for her personal and economic losses to which she is entitled to recover.

### <u>Violation of Prompt Payment under Chapter 542 of the Texas Insurance Code</u>

51.     Curtis incorporates all of the foregoing paragraphs as if fully set forth herein.

52.     Travelers was notified of the Claim related to the Premises on January 11, 2010.   Thereafter, Travelers did not *timely* (i) acknowledge, investigate or request information about the claim; (ii) accept, reject, or extend time to decide the claim; or (iii) pay the claim.

53.     Curtis's statement was not taken until January 28, 2010, more than 15

**PLAINTIFF'S FIRST AMENDED COMPLAINT**                                      **Page - 18**

days after she provided notification of the Claim.  There were no outstanding requests for information as of the date of her statement on January 28, 2010.  However, on that date, Curtis was requested to provide and did provide on that same date all requested information regarding utility bills, plumbing repairs and the lease of Curtis's prior tenant. After receipt of that information, no additional requests for information were made by Travelers on that day or in the days to follow. This triggered Travelers' duty to accept, reject or pay the claim within 15 business days or by February 16, 2010, which Travelers failed and refused to do, despite Curtis's repeated requests.  Travelers next requests for information would not be made until February 24, 2010, April 22, 2010, and June 1, 2010.

54.     Curtis fully cooperated with each and every request by Travelers for information but without waiver of her rights under the aforementioned statutes and applicable law.  As early as January 28, 2010 (and certainly by March 5, 2010, at the latest) Travelers had all the information it had requested and that it knew Curtis could provide to evaluate the Claim.  Notwithstanding such cooperation, Travelers failed to accept, reject, extend the time to pay, or adequately pay the Claim.

55.     More than 60 days has passed from the date of Curtis's written demand for payment under the afore-mentioned statutes and applicable law.  Thus, Curtis is entitled to recover the additional sum of 18 percent per annum on her damages as described in this complaint from February 16, 2010 (the date of violation of the statute) until the day before judgment for Curtis is signed.

**Attorneys' fees**

56     Curtis incorporates all of the foregoing paragraphs as if fully set forth

herein.

57.     Curtis has been compelled to engage the services of her law firm and the attorney whose name is subscribed to this pleading for the prosecution and collection of this Claim.  Therefore, Curtis is entitled to recover a reasonable sum for the necessary services of her attorneys in the preparation and trial of this action, including any appeals to the Supreme Court of Texas against Travelers and Swauger.

58.     In addition to the foregoing, Travelers' actions in breach of the Policy created the need for Curtis to employ the services of an attorney.  Pursuant to TEX. CIV. PRAC. & REM. CODE § 38.001, Curtis is entitled to recover her reasonable and necessary attorneys' fees.

## Treble Damages

59.     Curtis incorporates all of the foregoing paragraphs as if fully set forth herein.

60.     Curtis will show that Travelers' acts and omissions in violation of TEX. INS. CODE §§ 541.060(a)(2) and 541.060(a)(4)(A) and Swauger's acts and omissions in violation of TEX. INS. CODE §§ 541.060(a)(2) were done knowingly, that is with actual awareness of the falsity, unfairness, or deception of the conduct described. Consequently, Curtis requests that the trier of fact award additional damages of up to three times the sums of actual damages suffered.

## VII.  PRAYER

61.     For these reasons, Curtis asks that Travelers and Swauger be cited to appear and answer, and that on final trial of this cause, Curtis recover from Travelers and Swauger the following (minus any partial payments on the Claim):

As to Travelers:

    A.    The sum of $103,382.47, as the benefits payable under the insurance policy made the basis of this suit, together with interest at the rate of five percent per annum from on or about February 16, 2010, until the date of judgment;

    B.    The sum equal to interest at 18 percent per annum on $103,382.47, from February 16, 2010 until the day before judgment is signed in this case as the statutory penalty for Traveler's failure to comply with the prompt payment provisions Chapter 542 of the Texas Insurance Code;

    C.    A sum equal to the amount of expenses necessary to remove the lien that was placed on the Premises by the remediation vendor, and other damages to Plaintiff's property and creditworthiness caused thereby;

    D.    A sum equal to the amount of rental income and other value lost and expenses incurred as a result of Travelers' acts and omissions, including Plaintiff's loss of the use and enjoyment of her property;

    E.    Additional damages for mental anguish;

    F.    Additional damages of up to three times the sums of actual damages suffered;

    G.    A reasonable sum for attorney's fees, as found by the trier of fact, with conditional sums for the services of Curtis's attorney in the event of subsequent appeals;

    H.    Interest on the judgment at the highest rate provided by law from the date of judgment until paid;

I.      Costs of suit; and

J.      Such other and further relief to which Curtis may be justly entitled.

As to Swauger:

A.      A sum equal to the amount of expenses necessary to remove the lien that was placed on the Premises by the remediation vendor, and other damages to Plaintiff's property and creditworthiness caused thereby;

B.      A sum equal to the amount of rental income and other value lost and expenses incurred as a result of Swauger's acts and omissions, including Plaintiff's loss of the use and enjoyment of her property;

C.      Additional damages for mental anguish;

D.      Additional damages of up to three times the sums of actual damages suffered;

E.      A reasonable sum for attorney's fees, as found by the trier of fact, with conditional sums for the services of Curtis's attorney in the event of subsequent appeals;

F.      Interest on the judgment at the highest rate provided by law from the date of judgment until paid;

G.      Costs of suit; and

H.      Such other and further relief to which Curtis may be justly entitled

Dated: August 9, 2010.                    Respectfully submitted,


                                          *S/ Todd C. Donohue*
                                          Todd C. Donohue
                                            State Bar No. 24026808
                                            tdonohue@curtislaw.net
                                          Sarah A. Walters
                                            State Bar No. 24070842
                                            swalters@curtislaw.net
                                          THE CURTIS LAW FIRM, PC
                                          Bank of America Plaza
                                          901 Main Street, Suite 6515
                                          Dallas, Texas  75202
                                          Telephone: (214) 752-2222
                                          Facsimile:  (214) 752-0709
                                          **ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

This is to certify that, on August 9, 2010, a true and correct copy of the foregoing document was served on all parties listed below by hand delivery or first-class mail, postage prepaid, and also upon all parties receiving ECF notification in the above-referenced case.

Terrence C. McRea
Zelle Hofmann Voelbel & Mason LLP
901 Main St., Ste. 4000
Dallas, Texas 75202-3975

COUNSEL FOR DEFENDANT
THE TRAVELERS HOME AND
MARINE INSURANCE COMPANY

As a newly-added Defendant, Gerald E. Swauger will be served with this First Amended Complaint and Summons as required by Rule 4 of the Federal Rules of Civil Procedure.

_s/ Sarah A. Walters_____
Sarah A. Walters